UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:

HOWARD COHAN,

     Plaintiff,

vs.                                       INJUNCTIVE RELIEF SOUGHT

FIRST COAST ENERGY, L.L.P.,
a Limited Liability Partnership,

     Defendant(s).
_____/

## COMPLAINT

Plaintiff, HOWARD COHAN ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and sues FIRST COAST ENERGY, L.L.P., a Limited Liability Partnership ("Defendant"), for declaratory and injunctive relief, attorneys' fees, expenses and costs (including, but not limited to, court costs and expert fees) pursuant to 42 U.S.C. § 12182 et. seq., and the 2010 Americans with Disabilities Act ("ADA") and alleges as follows:

## JURISDICTION AND VENUE

1.     This is a complaint for breach of contract and injunctive relief seeking enforcement of the Consent Decree (copy attached as Exhibit A) reached in the case of HOWARD COHAN v. FIRST COAST ENERGY, L.L.P., a Limited Liability Partnership, 0:18-CV-62657-BB (S.D. Fla.) (dismissed by order upon decree) which arose out of Plaintiff's claim of discrimination caused by certain barriers encountered by Plaintiff on Defendant's property that prevented Plaintiff from the full and equal enjoyment of a place of public accommodation in violation of Title III of the Americans with Disabilities Act.

2.      This Court is vested with original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 343 for Plaintiff's claims arising under Title 42 U.S.C. § 12182 et. seq., based on Defendant's violations of Title III of the ADA.  *See also,* 28 U.S.C. §§ 2201, 2202, as well as the 2010 ADA Standards.

3.      Venue is proper in this Court, Fort Lauderdale Division, pursuant to 28 U.S.C. § 1391(B) and Internal Operating Procedures for the United States District Court for the Southern District of Florida in that all events giving rise to the lawsuit occurred in Palm Beach County, Florida.

## PARTIES

4.      Plaintiff, HOWARD COHAN is *sui juris* and is a resident of the State of Florida residing in Palm Beach County, Florida. Upon information and belief, Defendant is the lessee, operator, owner and lessor of the Real Property, which is subject to this suit, and is located at 16000 W. SR-84, Weston, FL 33326 (hereinafter "Shell Weston"), 2600 N. 29th Ave., Hollywood, FL 33020 (hereinafter "Shell Hollywood"), 7000 W. Commercial Blvd, Lauderhill, FL 33319 (hereinafter "Shell Lauderhill"), 3201 SW 160th Ave., Miramar, FL 33027 (hereinafter "Shell Miramar"), 800 W Hallandale Beach Blvd., Hallandale Beach, FL 33009 (hereinafter "Shell Hallandale"), and 15991 Sheridan St., Southwest Ranches, FL 33331 (hereinafter "Shell Ranches"), (collectively referred to as "Premises"), and is the owner of the improvements where Premises is located.

5.      Defendant is authorized to conduct, and is in fact conducting, business within the state of Florida.

6.      Plaintiff is an individual with numerous permanent disabilities including severe spinal stenosis of the lumbar spine with spondylolisthesis; severe spinal stenosis of the cervical

spine with nerve root compromise on the right side; a non-union fracture of the left acromion (shoulder); a labral tear of the left shoulder; a full thickness tear of the right rotator cuff; a right knee medial meniscal tear; a repaired ACL and bilateral meniscal tear of the left knee; and severe basal joint arthritis of the left thumb. The above listed permanent disabilities and symptoms cause sudden onsets of severe pain and substantially limit Plaintiff's major life activities. As such, Plaintiff suffered from a "qualified disability" under the ADA. 42 U.S.C § 12101, *et seq.*

7.    Plaintiff initially visited Defendant's Premises on the following dates:

- Shell Weston: September 1, 2017

- Shell Hollywood: June 15, 2017;

- Shell Lauderhill: February 20, 2018;

- Shell Miramar: October 2, 2018;

- Shell Hallandale: October 20, 20218; and

- Shell Ranches: September 17, 2017, and October 16, 2018

At the time of Plaintiff's visit to the Premises, Plaintiff required the use of fully accessible restrooms, fully accessible and properly marked parking for individuals with disabilities, fully accessible paths of travel throughout the facility, and fully accessible service and eating areas. Plaintiff personally visited the Premises but was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the Premises, even though he was a "bona fide patron".

8.    Defendant's Premises is a public accommodation as defined by Title III of the ADA and as such is governed by the ADA.

9.    Pertaining to Shell Weston, on or about January 16, 2018, Plaintiff filed a lawsuit against Defendant seeking to force Defendant to comply with the ADA and applicable regulations

thereto. See HOWARD COHAN v. FIRST COAST ENERGY, L.L.P., 0:18-CV-60089-WJZ (S.D. Fla.).

10.     On or about January 16, 2018, Plaintiff's suit was dismissed upon stipulation and notice to the U.S. District Court that the parties had settled.

11.     In connection with said dismissal, Plaintiff and Defendant entered into a Consent Decree (Exhibit A) on or about October 17, 2019.

12.     The Consent Decree required Defendant to complete all modifications to the Premises, Shell Weston, by on or about October 17, 2020.

13.     Defendant has failed to complete the required modification(s) to the Premises as required by the ADA and the Consent Decree and Defendant has failed to give notice of any reasons or documentation for non-compliance.

14.     On or about November 2, 2018, Plaintiff filed a lawsuit against Defendant for the remaining locations, Shell Hollywood, Shell Lauderhill, Shell Miramar, Shell Hallandale, and Shell Ranches, seeking to force Defendant to comply with the ADA and applicable regulations thereto. See HOWARD COHAN v. FIRST COAST ENERGY, L.L.P., 0:18-CV-62657-BB (S.D. Fla.)

15.     On or about October 25, 2019, Plaintiff's suit was dismissed upon stipulation and notice to the U.S. District Court that the parties had settled.

16.     In connection with said dismissal, Plaintiff and Defendant entered into a Consent Decree (Exhibit B) on or about October 17, 2019.

17.     The Consent Decree required Defendant to complete all modifications to the Premises of:

- Shell Hallandale, Shell Hollywood, Shell Lauderhill by April 17, 2021; and

- Shell Miramar and Shell Ranches by October 17, 2020.

18.    Defendant has failed to complete the required modification(s) to the Premises as required by the ADA and the Consent Decrees and Defendant has failed to give notice of any reasons or documentation for non-compliance.

19.    Plaintiff again personally visited Defendant's Premises:

- Shell Weston: October 19, 2020, October 14, 2021, and May 11, 2022

- Shell Hollywood: March 25, 2021, and April 8, 2022

- Shell Lauderhill: March 24, 2021, and April 8, 2022

- Shell Miramar: March 22, 2021

- Shell Hallandale: March 22, 2021, and October 24, 2021

- Shell Ranches: March 22, 2021

(and prior to instituting this action).

20.    Plaintiff required the use of fully accessible restrooms, fully accessible and properly marked parking for individuals with disabilities, fully accessible paths of travel throughout the facility, and fully accessible service and eating areas. Plaintiff was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the Premises, even though was "bona fide patron".

21.    Plaintiff, in his individual capacity, has shown that he will absolutely return to the Premises and avail himself of the services offered when Defendant modifies the Premises or modifies the policies and practices to accommodate individuals who have physical disabilities.

22.    Plaintiff is continuously aware of the violations at Defendant's Premises and is aware that it would be a futile gesture to return to the Premises as long as those violations exist, and Plaintiff is not willing to suffer additional discrimination.

23.    Plaintiff has suffered, and will continue to suffer, direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.

24.    Plaintiff would like to be able to be a patron of the Premises in the future and be able to enjoy the goods and services that are available to the able-bodied public but is currently precluded from doing so as a result of Defendant's discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the Premises until corrective measures are taken at the Premises to eliminate the discrimination against persons with physical disabilities.

25.    Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering and engaging discrimination against the disabled in public accommodations. When acting as a "tester", Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least those that Plaintiff is able to access; tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to Premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do.  Independent of other subsequent visits, Plaintiff also intends to visit the Premises regularly to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of Premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester", visited Premises, encountered barriers to access at Premises, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set

forth herein.  It is Plaintiff's belief that said violations will not be corrected without Court intervention, and thus Plaintiff will suffer legal harm and injury in the near future.

26.     Plaintiff, in his capacity as a tester, will absolutely return to the Premises when Defendant modifies the Premises or modifies the policies and practices to accommodate individuals who have physical disabilities to confirm said modifications have been completed in accordance with the requirements of the ADA.

### COUNT I
### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

27.     Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 26 above as if fully stated herein.

28.     On July 26, 1990, Congress enacted the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq. Commercial enterprises were provided one and a half (1.5) years from enactment of the statute to implement its requirements.  The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendant(s) have ten (10) or fewer employees and gross receipts of $500,000.00 or less. *See* 42 U.S.C. § 12182; 28 C.F.R. § 36.508(a).

29.     Congress found, among other things, that:

a.    some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

b.    historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

c.    discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication,

recreation, institutionalization, health services, voting and access to public services and public facilities;

d.  individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices. Exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and,

e.  the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and accosts the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1)-(3),(5) and (9).

30.  Congress explicitly stated that the purpose of the ADA was to:

a.  provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

b.  provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c.  invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities.

U.S.C. § 12101(b)(1)(2) and (4).

31.     Pursuant to 42 U.S.C. § 12182(7), 28 C.F.R. § 36.104 and the 2010 ADA Standards, Defendant's Premises is a place of public accommodation covered by the ADA by the fact it provides services to the general public and must be in compliance therewith.

32.     Defendant has discriminated and continues to discriminate against Plaintiff and others who are similarly situated, by denying access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations located at the Premises, as prohibited by 42 U.S.C. § 12182 and 42 U.S.C. § 12101 et. seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv).

33.     Plaintiff has visited Premises and has been denied full and safe equal access to the facilities and therefore suffered an injury in fact.

34.     Plaintiff would like to return and enjoy the goods and/or services at Premises on a spontaneous, full and equal basis. However, Plaintiff is precluded from doing so by the Defendant's failure and refusal to provide disabled persons with full and equal access to their facilities. Therefore, Plaintiff continues to suffer from discrimination and injury due to the architectural barriers that are in violation of the ADA.

35.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Officer of the Attorney General promulgated Federal Regulations to implement the requirements of the ADA. *See* 28 C.F.R. § 36 and its successor the 2010 ADA Standards ADA Accessibility guidelines (hereinafter referred to as "ADAAG"), 28 C.F.R. § 36, under which said Department may obtain civil penalties of up to $55,000.00 for the first violation and $110,000.00 for and subsequent violation.

36.     Based on a preliminary inspection of the Premises, Defendant is in violation of 42 U.S.C. § 12182 et. seq. and the 2010 American Disabilities Act Standards et. seq., and is discriminating against Plaintiff as a result of, inter alia, the following specific violations:

I.     **SHELL WESTON**

**Unisex restroom**

a.   Failure to provide proper signage for an accessible restroom or failure to redirect a person with a disability to the closest available accessible restroom facility in violation of 2010 ADAAG §§ 216, 216.2, 216.6, 216.8, 603, 703, 703.1, 703.2, 703.5 and 703.7.2.1.

b.   Providing grab bars of improper horizontal length or spacing as required along the wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

c.   Failure to provide the proper insulation or protection for plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§ 606 and 606.5.

d.   Failure to provide toilet cover dispenser at the correct height above the finished floor in violation of 2010 ADAAG §§ 606, 606.1 and 308.

e.   Failure to provide a dispenser in an accessible position (back wall or other inaccessible place) so that it can be reached by a person with a disability in violation of 2010 ADAAG §§ 606, 606.1, 308 and 308.2.2 (toilet seat cover dispenser).

f.   Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3 (toilet seat cover dispenser).

g.   Failure to provide proper knee clearance for a person with a disability under a counter or sink element in violation of 2010 ADAAG §§ 306, 306.1 306.3, 606 and 606.2

h.  Failure to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG §§ 604 and 604.2.

i.  Failure to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§ 604, 604.7 and 309.4.

j.  Failure to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability in violation of 2010 ADAAG §§ 309, 309.1, 309.3, 309.4 and 308 (fan/air unit).

k.  Providing an element or object that protrudes greater than 4" into a pathway or space of travel situated between 27" and 80" high in violation of 2010 ADAAG §§ 204, 307, 307.1, 307.2 (fan/air unit).

## II.  <u>SHELL HOLLYWOOD</u>

**Men's Restroom**

a.  Providing grab bars of improper horizontal length or spacing as required along the rear wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

b.  Providing grab bars of improper horizontal length or spacing as required along the side wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

c.  Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3. (Paper towel dispenser)

d.  Failure to provide the proper insulation or protection for plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§ 606 and 606.5.

e.      Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3. (Soap dispenser)

f.      Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§ 404, 404.1, 404.2, 404.2.9 and 309.4.

**Disabled Parking**

g.      Providing pathways and surfaces that are uneven in violation of 2010 ADAAG §§ 206, 206.1, 206.2, 206.2.2, 303 and 403.4.

### III.      SHELL LAUDERHILL

**Unisex Restroom**

a.      Providing a swinging door or gate with improper maneuvering clearance(s) due to a wall or some other obstruction in violation of 2010 ADAAG §§ 404, 404.1, 404.2, 404.2.4 and 404.2.4.1. (Trash can)

b.      Failure to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability in violation of 2010 ADAAG §§ 309, 309.1, 309.3, 309.4 and 308. (Door handle)

c.      Failure to provide grab bars at 33 inches minimum and 36 inches maximum above the finished floor measured to the top of the gripping surface in violation of 2010 ADAAG §§ 609, 609.4 and 609.7. (Rear and side)

d.     Providing an element or object that protrudes greater than 4" into a pathway or space of travel situated between 27" and 80" high in violation of 2010 ADAAG §§ 204, 307, 307.1, 307.2. (hand dryer)

e.     Failure to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability in violation of 2010 ADAAG §§ 309, 309.1, 309.3, 309.4 and 308. (Soap dispenser)

f.     Failure to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§ 604, 604.7 and 309.4.

g.     Failure to provide the proper insulation or protection for plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§ 606 and 606.5.

**Service Counter Access**

h.     Providing counter heights exceeding 36 inches making it impossible to service a person with a disability in violation of 2010 ADAAG §§ 904, 904.4, 904.4.1, 904.4.2, 305 and 306.

## IV.     <u>SHELL MIRAMAR</u>

**Men's Restroom**

a.     Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§ 404, 404.1, 404.2, 404.2.9 and 309.4.

b.      Failure to provide proper knee clearance for a person with a disability under a counter or sink element in violation of 2010 ADAAG §§ 306, 306.1 306.3, 606 and 606.2

c.      Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3. (Toilet seat cover dispenser)

d.      Failure to provide rear and side grab bars at 33 inches minimum and 36 inches maximum above the finished floor measured to the top of the gripping surface in violation of 2010 ADAAG §§ 609, 609.4 and 609.7.

e.      Providing grab bars of improper horizontal length or spacing as required along the rear and side wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

f.      Failure to provide sufficient clear floor space around a water closet without any obstructing elements in this space in violation of 2010 ADAAG §§4.22.3, 603, 603.2.3, 604, 604.3 and 604.3.1. (Trash can)

g.      Failure to provide a dispenser in an accessible position (back wall or other inaccessible place) so that it can be reached by a person with a disability in violation of 2010 ADAAG §§ 606, 606.1, 308 and 308.2.2. (Toilet seat cover dispenser)

h.      Failure to provide the correct height for a table surface or for a baby changing table, in violation of 2010 ADAAG §§902, 902.1, 902.2, 902.3, and/or §4.32.4 of the 1991 ADA Standards.

**Food Service Seating**

i.      Failure to provide seating for a person(s) with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§ 902, 902.2, 305 and 306.

j.      Failure to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§ 226, 226.1, 902, 305 and 306.

**V.      SHELL HALLANDALE**

**Men's Restroom**

a.      Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3. (hand dryer and toilet paper dispenser)

b.      Failure to provide rear grab bar at 33 inches minimum and 36 inches maximum above the finished floor measured to the top of the gripping surface in violation of 2010 ADAAG §§ 609, 609.4 and 609.7.

c.      Providing a swinging door or gate with improper maneuvering clearance(s) due to a wall or some other obstruction in violation of 2010 ADAAG §§ 404, 404.1, 404.2, 404.2.4 and 404.2.4.1.

d.      Providing grab bars of improper horizontal length or spacing as required along the rear wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

e.      Providing grab bars of improper horizontal length or spacing as required along the side wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

f.    Failure to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§ 604, 604.7 and 309.4.

g.    Failure to provide mirror(s) located above lavatories or countertops at the proper height above the finished floor in violation of 2010 ADAAG §§ 603 and 603.3.

h.    Failure to provide flush controls located on the open side of the water closet in violation of 2010 ADAAG §§309, 309.4, 604 and 604.6

i.    Failure to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability in violation of 2010 ADAAG §§ 309, 309.1, 309.3, 309.4 and 308. (door lock)

j.    Failure to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG §§ 604 and 604.2.

k.    Failure to provide proper knee clearance for a person with a disability under a counter or sink element in violation of 2010 ADAAG §§ 306, 306.1 306.3, 606 and 606.2.

l.    Failure to provide sufficient clear floor space around a water closet without any obstructing elements in this space in violation of 2010 ADAAG §§4.22.3, 603, 603.2.3, 604, 604.3 and 604.3.1. (Trash can)

m.    Failure to provide proper signage for an accessible restroom or failure to redirect a person with a disability to the closest available accessible restroom facility in violation of 2010 ADAAG §§ 216, 216.2, 216.6, 216.8, 603, 703, 703.1, 703.2, 703.5 and 703.7.2.1.

    n.    Failure to provide a coat hook within the proper reach ranges for a person with a disability in violation of 2010 ADAAG §§ 603, 603.4 and 308.

## VI.   <u>SHELL RANCHES</u>

Men's Restroom

    a.    Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§ 404, 404.1, 404.2, 404.2.9 and 309.4.

    b.    Failure to provide proper knee clearance for a person with a disability under a counter or sink element in violation of 2010 ADAAG §§ 306, 306.1 306.3, 606 and 606.2

    c.    Providing grab bars of improper horizontal length or spacing as required along the side wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

    d.    Failure to provide flush controls located on the open side of the water closet in violation of 2010 ADAAG §§309, 309.4, 604 and 604.6

    e.    Failure to provide mirror(s) located above lavatories or countertops at the proper height above the finished floor in violation of 2010 ADAAG §§ 603 and 603.3.

    f.    Failure to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability in violation of 2010 ADAAG §§ 309, 309.1, 309.3, 309.4 and 308. (Door lock)

37.    To the best of Plaintiff's belief and knowledge, Defendant has failed to eliminate the specific violations set forth in paragraph 36 herein.

38.    Although Defendant is charged with having knowledge of the violations, Defendant may not have actual knowledge of said violations until this Complaint makes Defendant aware of same.

39.     To date, the readily achievable barriers and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

40.     As the owner, lessor, lessee or operator of the Premises, Defendant is required to comply with the ADA. To the extent the Premises, or portions thereof, existed and were occupied prior to January 26, 1992, the owner, lessor, lessee or operator has been under a continuing obligation to remove architectural barriers at the Premises where removal was readily achievable, as required by 28 C.F.R. §36.402.

41.     To the extent the Premises, or portions thereof, were constructed for occupancy after January 26, 1993 the owner, lessor, lessee or operator of the Premises was under an obligation to design and construct such Premises such that it is readily accessible to and usable by individuals with disabilities, as required by 28 C.F.R. §36.401.

42.     Plaintiff has retained the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by Defendant, pursuant to 42 U.S.C. § 12205.

43.     All of the above violations are readily achievable to modify in order to bring Premises or the Facility/Property into compliance with the ADA.

44.     In instance(s) where the 2010 ADAAG standard does not apply, the 1991 ADAAG standard applies and all of the violations listed in paragraph 18 herein can be applied to the 1991 ADAAG standards.

45.     Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an order to alter the subject facility to make them readily

accessible to and useable by individuals with disabilities to the extent required by the ADA and closing the Subject Facility until the requisite modifications are completed.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

1. That this Court declares that Premises owned, operated and/or controlled by Defendant is in violation of the ADA;

2. That this Court enter an Order requiring Defendant to alter their facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

3. That this Court enter an Order directing the Defendant to evaluate and neutralize their policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures to Premises;

4. That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the Plaintiff; and,

5. That this Court award such other and further relief as it may deem necessary, just and proper.

## COUNT II
## BREACH OF CONTRACT
### (as to Shell Weston)

46.     Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 13 and 18 through 26 above as if fully stated herein.

47.     On or about October 17, 2019, Plaintiff and Defendant entered into a Consent Decree. [Exhibit A] Through this settlement agreement, Defendant agreed to make modifications to Defendant's Premises as outlined in the agreement. The Consent Decree required Defendant to complete all modifications to the Premises by on or about October 17, 2020.

48.     Plaintiff has performed all conditions precedent to be performed by him under the Agreement.

49.     Since October 17, 2020, Defendant has failed to complete the modifications promised in the settlement agreement. Specifically, Defendant has failed to perform the following agreed upon modifications:

**Men's Restrooms**

a.  In the men's accessible toilet room, modify all of the water supply and drainpipes under the lavatory so that they are insulated or otherwise configured to protect against contract in accordance with Section 606.5 of the 2010 Standards.

b.  The rear wall grab bar, behind the accessible water closet, is only 24 inches long. Modify it so that it is a minimum of 36 inches long and extends from the centerline of the accessible water closet a minimum oof 12 inches to the side wall and 24 inches, minimum, to the open other side. The top gripping surface shall be between 33 and 36 inches above the floor, all in accordance with Section 604.5 of the 2010 Standards. The grab bars must have 1 ½ inches, minimum, between it and the wall or other objects per Section 609.3 of the 2010 Standards.

c.  The toilet sea cover dispenser, in the Men's accessible toilet room, is mounted with the operating parts at 51 inches above the floor. Remove or modify it so that all operating parts are 48 inches maximum above the floor and there is an adjacent 30

inch by 48-inch maneuvering space in accordance with Sections 308.2 and 308.3 of the 2010 Standards.

d.  Install a toilet room sign to the latch (door lever) side of the toilet entrance door. Tactile character on the sign (such as TOILET ROOM) shall be located between 48 inches minimum and 60 inches maximum above the finished floor or ground surface, measured from the baseline of the highest tactile character. This toilet room sign shall have the international symbol of accessibility, raised lettering and Braille, all in accordance to Section 703 of the 2010 Standards.

50.    Plaintiff has been damaged by the defendant's breach of the settlement agreement. Specifically, Plaintiff has had to retain the services of the undersigned attorney to pursue this action for breach of contract.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

1.  That this Court declares that Defendant has failed to comply the Settlement Agreement and Release;

2.  That this Court enter an Order requiring Defendant to alter their facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

3.  That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the Plaintiff and as provided in the Settlement Agreement and Release; and,

4.  That this Court award such other and further relief as it may deem necessary, just and proper.

<u>**COUNT III**</u>
<u>**BREACH OF CONTRACT**</u>
<u>**(as to Shell Hollywood, Shell Lauderhill, Shell Miramar, Shell Hallandale, and Shell**</u>
<u>**Ranches)**</u>

51.     Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 8 and 14 through 26 above as if fully stated herein.

52.     On or about October 17, 2019, Plaintiff and Defendant entered into a Consent Decree [Exhibit B]. Through this Consent Decree, Defendant agreed to make modifications to Defendant's Premises as outlined in the decree. The Consent Decree required Defendant to complete all modifications to the Shell Hallandale, Shell Hollywood, and Shell Lauderhill by April 17, 2021, and Shell Miramar and Shell Ranches by October 17, 2020.

53.     Plaintiff has performed all conditions precedent to be performed by him under the Agreement.

54.     Since April 17, 2021, and October 17, 2020, Defendant has failed to complete the modifications promised in the Consent Decree. Specifically, Defendant has failed to address the following violations:

I.     **SHELL HOLLYWOOD**

**Men's Restroom**

a.     Modify the rear wall grab bar, behind the accessible water closet, so that it is a minimum of 36 inches long and extends from the centerline of the accessible water closet a minimum of 12 inches to the side wall and 24 inches minimum to the open other side. The top gripping surface s hall be between 33 and 36 inches above the floor, all in accordance with Section 604.5 of the 2010 Standards.

b.     Modify the side wall grab bar of the accessible water closet, so that it is a minimum of 36 inches long and extends from the centerline of the accessible water closet a minimum of 12 inches to the side wall and 24 inches minimum to the open other side. The top gripping surface s hall be between 33 and 36 inches above the floor, all in accordance with Section 604.5 of the 2010 Standards.

c.     The paper towel dispenser is 10 inches above the grab bar. Modify it so that it is at least 1 ½ inches below or 12 inches above the grab bar and the outlet of the dispenser is at least 15 inches minimum and 48 inches maximum above the finished floor, in accordance with Sections 609.3 and 308 of the 2010 Standards.

## II.     SHELL LAUDERHILL

**Unisex Restroom**

a.     Modify the unisex accessible toilet room door so that the hinges are on the south side of the door and is remains an out swinging door. This shall provide a maneuvering space on the exterior of the door so that for the width of doors plus an additional 24 inch offset on the latch side and 4 feet perpendicular to the doors the area remains level, not to exceed a slope of 1:48 (2.08%) in all directions.

b.     Modify the rear wall grab bar, behind the accessible water closet, so that it is a minimum of 36 inches long and extends from the centerline of the accessible water closet a minimum of 12 inches to the side wall and 24 inches minimum to the open other side. The top gripping surface s hall be between 33 and 36 inches above the floor, all in accordance with Section 604.5 of the 2010 Standards. Both grab bars must have 1 ½ inches minimum between the grab bars and the wall or other objections per Section 609.3 of the 2010 Standards.

### III.  **SHELL MIRAMAR**

**Men's Restroom**

a. The door to the accessible men's restroom requires 6 pounds of pressure to open. Adjust or replace the door closers so that it requires 5 pounds of pressure or less to operate, in accordance with Section 404.2.9 of the 2010 Standards.

b. In the accessible men's restroom, the knee space at the lavatory is 26 inches above the floor where 27 inches minimum is required. Modify the lavatory so that the front rim height of the accessible lavatory shall not exceed 34 inches above the floor and knee space of at least 27 inches high by 17 inches deep and 30 inches wide shall be provided below the lavatory. The knee clearance shall be a minimum of 11 inches deep, at 9 inches above the finished floor, and a minimum of 8 inches deep at 27 inches above the finished floor. Between 9 inches and 27 inches above the finished floor or ground, the knee clearance shall be permitted to reduce at a rate of 1 inch in depth for each 6 inches in height, all in accordance with Section 606 of the 2010 Standards.

c. In the accessible men's restroom, modify the toilet seat cover dispenser near the rear wall grab bar of the accessible water closet, so there is a minimum of 1 ½ inch space between the grab bar and protruding toilet seat cover dispenser below or at the ends, all in accordance with Section 609.3 of the 2010 Standards.

d. Modify the rear wall grab bar, behind the accessible water closet, so that it is a minimum of 36 inches long and extends from the centerline of the accessible water closet a minimum of 12 inches to the side wall and 24 inches, minimum, to the open other side. Modify the side wall grab bar of the accessible water closet so that it is a minimum of 42 inches long (48 inches is suggested), starts no more than 12 inches

rom the rear wall and extends along the side wall at least 54 inches from the rear wall into the room. The top gripping surface shall be between 33 and 36 inches above the floor for both grab bars, all in accordance with Section 604.5 of the 2010 Standards.

### IV.   <u>SHELL HALLANDALE</u>

**Men's Restroom**

a.   The toilet paper dispenser and the electric hand dryer in the unisex accessible toilet room are less than 12 inches above the grab bars in violation of Section 609.3 of the 2010 Standards. Modify the toilet paper dispenser so that it is 7 to 9 inches in front of the water closet and 1 ½ inches below or 12 inches above the grab bars and the outlet of the dispense ris at least 15 inches minimum and 48 inches maximum above the finished floor, in accordance with Sections 604.7 and 609.3 of the 2010 Standards. Modify the electric hand dryer so that it is mounted with all operating parts between 15 and 48 inches above the floor and 1 ½ inches below or 12 inches above the grab bars in accordance with Sections 609.3, 308.2 and 308.3 of the 2010 Standards. An adjacent clear space of 30 inches in width by 48 inches in depth shall also be provided.

b.   Modify the side wall grab bar of the accessible water closet so that it is a minimum of 42 inches long (48 inches is suggested), starts no more than 12 inches from the rear wall and extends along the side wall at least 54 inches from the rear wall into the room. The top gripping surface shall be between 33 and 36 inches above the floor. Modify the rear grab bar, behind the accessible water closet, in the unisex accessible toilet room so the top gripping surface is between 33 and 36 inches above the floor, in accordance with Section 604.5 of the 2010 Standards.

c.     The outer door on the accessible route to the unisex accessible restroom, has zero inches of additional width on the latch side of the door for the maneuvering clearance on the push side of the door were 12 inches is required per Section 404 of the 2010 Standards. Remove this door so that there is no additional width required at the 33 inch wide doorway.

d.     In the unisex accessible toilet room, modify the toilet paper dispenser so that it is 7 to 9 inches in front of the water closet and 1 ½ inches below or 12 inches above the grab bars and the outlet of the dispenser is at least 15 inches minimum and 48 inches maximum above the finished floor, in accordance with Sections 604.7 and 609.3 of the 2010 Standards.

e.     In the unisex accessible toilet room, modify the mirror above the accessible lavatory so that it is mounted with the bottom edge of the reflective, non-beveled surface no higher than 40 inches above the floor in accordance with Section 603.3 of the 2010 Standards.

## V.     SHELL RANCHES

Men's Restroom

a.     The door to the accessible men's restroom requires 6 pounds of pressure to open. Adjust or replace the door closers so that it requires 5 pounds of pressure or less to operate, in accordance with Section 404.2.9 of the 2010 Standards.

b.     In the accessible men's restroom, the knee space at the lavatory is 26 inches above the floor where 27 inches minimum is required. Modify the lavatory so the front rim height of the accessible lavatory shall not exceed 34 inches above the floor and knee space of at least 27 inches high by 17 inches deep and 30 inches wide shall be provided below the lavatory. The knee clearance shall be a minimum of 11 inches

deep, at 9 inches above the finished floor, and a minimum of 8 inches deep at 27 inches above the finished floor. Between 9 inches and 27 inches above the finished floor or ground, the knee clearance shall be permitted to reduce at a rate of 1 inch in depth for each 6 inches in height, all in accordance with Section 606 of the 2010 Standards.

c.    In the accessible men's restroom, the side wall grab bar extends only 48 inches from the rear wall where 54 inches is required. Modify the side wall grab bar of the accessible water closet so that it is a minimum of 42 inches long (48 inches is suggested), starts no more than 12 inches from the rear wall and extends along the side wall at least 54 inches from the rear wall into the room. The top gripping surface shall be between 33 and 36 inches above the floor, all in accordance with Section 604.5 of the 2010 Standards.

55.    Plaintiff has been damaged by the defendant's breach of the Consent Decree. Specifically, Plaintiff has had to retain the services of the undersigned attorney to pursue this action for breach of contract.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

1.    That this Court declares that Defendant has failed to comply the Consent Decree;

2.    That this Court enter an Order requiring Defendant to alter their facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

3.  That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the Plaintiff and as provided in the Consent Decree; and,

4.  That this Court award such other and further relief as it may deem necessary, just and proper.

Dated May 16, 2022.

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
SAMANTHA L. SIMPSON, ESQUIRE
Florida Bar No.: 1010423
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** samantha@sconzolawoffice.com
**Secondary Email:** alexa@sconzolawoffice.com
**Secondary Email:** natalia@sconzolawoffice.com
